UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ISAAC V. GOMEZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   No. 3:19-cv-00026 |
| METROPOLITAN GOVERNMENT OF | ) |
| NASHVILLE AND DAVIDSON | ) |
| COUNTY, TENNESSEE, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND OMNIBUS ORDER

In advance of trial, scheduled to begin on August 17, 2021, Defendant Metro has filed motions in limine (Doc. Nos. 83, 95) along with a Motion to Determine Issues for Trial (Doc. No. 116). Plaintiff Gomez has filed a motion in limine for Rule 37(e)(1) Sanctions. (Doc. No. 57). The Court will address each motion below. For the following reasons, each of Metro's motions will be denied and Gomez's motion will be granted.

    A.   Defendant's Motion in Limine # 2

On November 7, 2017, Gomez received an email over Metro's computer system from Smith's email account; the subject heading read "I hate," and the body of the message read "Hispanic like you." (the "I hate" email). (See Doc. No. 47-7). The Court otherwise assumes the parties' familiarity with the facts of this case and need not recite them here. In short, Metro argues that the "I hate" email should not be admissible because it is a stray remark by a non-decisionmaker. (See Doc. Nos. 83, 84, 94). Gomez counters that it is admissible because it is probative of a hostile work environment claim. (See Doc. No. 90).

The Court agrees with Gomez. "Courts must examine the totality of the circumstances to determine whether or not a hostile work environment exists." Ayala v. Summit Constructors, Inc., 788 F. Supp. 2d 703, (M.D. Tenn. 2011) (citing Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)). "Factors that may be considered when assessing the circumstances of a potential hostile work environment include: the frequency of the harassing conduct; the severity of the harassing conduct; whether the conduct is physically threatening or humiliating or merely an offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance." (Id.). These factors may include the conduct of decision-makers because "a court must consider the work environment as a whole and all the alleged incidents of harassment by all perpetrators for their cumulative effect." Mocic v. Sumner Cty. Emergency Med. Servs., 929 F. Supp. 2d 790, 798–98 (M.D. Tenn. 2013) (citing Williams v. GMC, 187 F.3d 553, 562–63 (6th Cir. 1999)).

In its reply, Metro argues that in a co-worker hostile work environment claim, as here, the harassing conduct is irrelevant; the prudent inquiry is the employer's response. (See Doc. No. 94 at 1). Metro thus argues that because Smith was Gomez's co-worker rather than supervisor, any email sent from her is irrelevant. (See id.). But the Court disagrees. Based on the totality of the circumstances, the "I hate" email is relevant to a hostile work environment claim and must be examined as an "alleged incident[] of harassment by all perpetrators for their cumulative effect." Mocic, 929 F. Supp. 2d at 798–98 (citing Williams, 187 F.3d at 562–63). Accordingly, Defendant's Motion in Limine # 2 is **DENIED**.

B.  Defendant's Motion in Limine # 3

On December 21, 2020, Gomez filed a Motion in Limine for Rule 37(e)(1) Sanctions. (Doc. No. 57). In that motion, Gomez argued that Metro failed to preserve electronically stored information (ESI) relevant to his hostile work environment claim, including contemporaneous

emails to the "I hate" email. The Court denied the motion without prejudice subject to refiling by February 19, 2021. (Doc. No. 82). On February 15, 2021, Gomez filed a Motion for Reconsideration that, in part, invoked the ESI issues previously raised. (Doc. Nos. 87, 88). Metro responded that it had no duty to preserve. (Doc. Nos. 67, 95). Because the Court has not yet resolved this ESI dispute, it will do so here. For the following reasons, the Court finds that Metro had a duty to preserve ESI, that it failed to do so, and that certain sanctions are warranted.

Federal Rule of Civil Procedure 37 prescribes remedies for the failure to preserve ESI. The rule provides that "[i]f electronically stored information that should have been preserved in the anticipation . . . of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). And if "the court finds that the party acted with the intent to deprive another party of the information's use in the litigation, it may: (1) presume that the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment." Billiter, 329 F. Supp. 3d at 465 (citing Fed. R. Civ. P. 37(e)(2)).

Courts maintain "broad discretion to craft proper sanctions" for a party's failure to preserve evidence. Id. (internal citations omitted); see also Adkins v. Wolever, 554 F.3d 650, 651 (6th Cir. 2009). "Because failures to produce relevant evidence fall along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality, the severity of such a sanction may, depending on the circumstances of the case, correspond to the party's fault." United States v. Houston, No. 17-5169, 2018 U.S. App. LEXIS 11738, at *5–6 (6th Cir. May 3, 2018) (internal citations and quotations omitted). But to establish that severe sanctions,

such as adverse inferences, are warranted, a party must show that: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Billiter, 329 F.3d at 466; see also Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC, 774 F.3d 1065, 1070 (6th Cir. 2014)). The Court will analyze these factors below.

A party's duty to preserve evidence must be triggered by an event that places the party on "notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008) (internal citations omitted); see also United States v. Florence, No. 2:13-cv-00035, 2020 WL 1047377, at *4 (M.D. Tenn. Mar. 4, 2020) ("While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action . . . .") (internal quotations omitted). The duty "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Silvestri v. GMC, 271 F.3d 583, 591 (4th Cir. 2001); see also United States v. Florence, No. 2:13-cv-00035, 2020 WL 1047377, at *4 (M.D. Tenn. Mar. 4, 2020). Various events may put a party on notice of litigation and trigger a duty to preserve, including demand letters, preservation requests, threats of litigation, or a party's decision to pursue a claim. See EPAC I, 2018 WL 1542040, at *16 (collecting cases).

Here, Gomez argues that several events triggered Metro's duty to preserve contemporaneous ESI to the "I hate" email, including that: (1) Gomez's prior counsel shared

4

the "I hate" email to Metro's legal department; (2) Gomez filed an EEOC charge on January 10, 2018; (3) Metro's HR Department filed an investigative report on February 22, 2018; and (4) Gomez's prior counsel requested a litigation hold. (See Doc. No. 58 at 4–5). Metro counters that, despite these events, it nether had notice nor a duty to preserve. (Doc. No. 67 at 2–3). Metro also argues that because Ms. Smith transferred offices prior to the EEOC charge, they were under no "obligation to retain obsolete emails pertaining to [Ms. Smith's] previous position . . . ." (Id. at 3).

Having thoroughly reviewed the record, the Court finds that Metro had a duty to preserve ESI. Gomez and Smith each had work email accounts and were able to exchange emails. Sometime between December 2017 and January 2018, Gomez circulated the "I hate" email to Metro's legal department, signaling a threat of litigation and intent to potentially pursue a claim. (See Doc. No. 36-3 at 8). Around this time, Gomez also shared the email with co-workers. (Id.). On January 10, 2018, Gomez filed his first EEOC charge. (See Doc. No. 36-2 at 1). The charge explicitly referenced the "I hate" email. (Id. at 2). Around February or March 2018, Chief Information Security Officer John Griffey extracted the "I hate" email from Gomez's mailbox, determining it was sent from Ms. Smith's email account. (See Doc. No. 58 at 3; see also Doc. No. 58-3). Exchange Administrator Luis Garcia confirmed that the email came from Smith's account. (See Doc. No. 119-1). In August 2018, Gomez's counsel instructed Metro "to place a litigation hold on Ms. Smith's computer." (Doc. No. 58 at 4; see also Doc. No. 58-4). Yet, despite each of these occurrences, Metro preserved only the "I hate" email rather than any contemporaneous emails that were reasonably related and would have shown whether Smith was at her desk. (See Doc. No. 58 at 4; see also Doc. No. 58-3). Thus, the relevant contemporaneous emails were deleted *after* Gomez filed his first EEOC charge.

5

These triggering events put Metro on notice of a workplace dispute between Smith and Gomez upon which the threat of litigation was reasonably anticipated. The dispute spawned internal investigations and multiple EEOC charges, each of which referenced the "I hate" email. But Metro was put on notice even before these charges – as early as December 2017. Indeed, Metro was reasonably put on notice of future litigation when Gomez circulated the email to Metro's legal department. And because Metro knew or should have known that Gomez's and Smith's email activity may be the source of information relevant to their disputed workplace relationship, it had a duty to not only preserve the "I hate" email but any emails exchanged between the parties – including contemporaneous emails to the "I hate" email. See Goetz, 879 F. Supp. 2d at 867. These emails were certainly relevant to Gomez's hostile work environment claim and whether, as the parties contend Smith or Gomez sent the email from her account.

Moreover, Metro had the ability to track Gomez's and Smith's emails in a sophisticated fashion. Metro specifically searched both Smith's and Gomez's email accounts for the "I hate" email, before eventually extracting it from Gomez's email. Metro demonstrated an ability to create a firewall log that would allow it to determine that emails were sent from Smith's account at times in close proximity to the "I hate" email. (See Doc. Nos. 58-1, 58-3). These methods allowed Metro to track whether Smith sent emails in close proximity to the "I hate" email. (See id.). That Metro failed to preserve emails despite being on notice and having an ability to track and extract all emails exchanged between the parties is inexcusable. Metro should have known that these emails were reasonably related to anticipated litigation. See Florence, 2020 WL 1047377, at *4; see also HelloFilters, Inc. v. Hoover, No. 3:17-cv-01569, at *2 (M.D. Tenn. Mar. 31, 2021). In sum, taking into account each of the triggering events discussed above, Metro was on notice as early as December 2018 that it should have preserved emails in anticipation of

litigation. See Fed. R. Civ. P. 37(e)(1). But somehow, Metro failed to place a litigation hold on emails until August 2018, allowing relevant emails to be deleted in the interim. Accordingly, the Court finds that Metro had an obligation to preserve such ESI and that sanctions are warranted.

However, the record evidence does not support the requisite culpable state of mind required for severe sanctions, such as an adverse inference. "The more severe sanctions available under Rule 37(e)(2), including an adverse inference jury instruction, may be imposed only on a finding of specific intent 'to deprive another party of the information's use in the litigation.'" EPAC Technologies, Inc. v. Harpercollins Christian Publishing, Inc., No. 3:12-cv-00463, 2019 WL 109371, at *15 (M.D. Tenn. Jan. 4, 2019) ("EPAC II") (citing Fed. R. Civ. P. 37(e)(2)). In instances such as these, "[a] showing of negligence or even gross negligence will not do the trick." Applebaum v. Target Corp., 831 F.3d 740, 745 (6th Cir. 2016). Nothing in the record suggests "specific intent" on the part of Metro to deprive Gomez of any use of evidence in this litigation. See EPAC II, 2019 WL 109371, at *15. At best, Metro was negligent. At worst, it was sloppy in its ability to preserve Gomez's and Smith's email history.

Nonetheless, the Court retains "broad discretion in crafting a proper sanction" for a party's failure to preserve evidence. Adkins, 554 F.3d at 652. "Among the measures that may be considered are 'forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument.'" Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2284.2 (3d ed.); see also Black, 2021 WL 2258322, at *4. Here, Metro seeks to argue that Gomez sent the email to himself from Smith's account. But because Metro failed to preserve relevant emails between Gomez and

Smith, let alone contemporaneous emails to the "I hate" email, allowing Metro to make such an argument would be inappropriate. Metro simply "failed to take reasonable steps to preserve the ESI," and there is nothing before the Court that the emails can be "obtained from another source." EPAC II, 2019 WL 109371, at *15. Thus, the Court concludes that Gomez has established that Metro had a duty to preserve ESI. Given Metro's level of negligently, but not maliciously, failing to do so, the Court concludes that at least some evidentiary sanctions would be appropriate.

Accordingly, Metro's Motion in Limine # 3 is **DENIED** and Plaintiff's Motion in Limine (Doc. No. 57) is **GRANTED**. The Court finds that the following sanctions are warranted, and, subject to trial proof, appropriately tailored to the case:

1. Any evidence that Gomez was at Smith's computer or workstation on or about 9:54 A.M. on November 8, 2017 and any evidence that Smith was not at her computer or workstation at said time shall be excluded at trial. In short, the parties will not be able to argue that Gomez sent the "I hate" email from Smith's computer;

2. Although Metro failed to preserve emails, it demonstrated an ability to track email traffic between Smith and Gomez. (See Doc. Nos. 58-1, 58-3). Thus, the parties may present evidence and argument that the "I hate" email came from Smith's electronic mailbox and that, based on Metro's ability to track email traffic, Smith sent other emails in close proximity to the "I hate email"; and

3. The Court will instruct the jury that "Metro had a duty to preserve emails from Gomez's and Smith's email accounts, including emails contemporaneous to the "I hate" email but failed to do so. The parties may present evidence and argument that the "I hate" email came from

8
Case 3:19-cv-00026   Document 125   Filed 08/04/21   Page 8 of 12 PageID #: 927

Smith's email account. You may give such evidence and argument whatever weight you deem appropriate as you consider all of the evidence presented at trial."

    C.  <u>Defendant's Motion to Determine Remaining Claims</u>

On February 2, 2021, the Court denied summary judgment as to Gomez's claims for hostile work environment and disability discrimination under the ADA but granted summary judgment as to Gomez's retaliatory discharge claim. (Doc. No. 97). On February 15, 2021, Gomez filed a Motion to Reconsider the Court's dismissal of the retaliation claim. (Doc. No. 87). On April 6, 2021, the Court denied the Motion to Reconsider, reasoning that Gomez failed to adequately plead retaliatory discharge. (<u>See</u> Doc. No. 97 at 3). In that opinion, the Court found that Gomez could not establish the "but for" cause required for retaliation claims. (<u>Id.</u> at 2–3). In a footnote, the Court further noted that "even if [Gomez] could establish a "but for" cause, he would be unable to show that Metro's reliance on [internal rules 2.4, 5.3, and 6.4] were a 'pretext for retaliation,' as is required by the familiar burden-shifting framework for Title VII retaliation claims." (<u>Id.</u> at 4. n. 4 (citing <u>Hubbell v. FedEx SmartPost, Inc.</u>, 933 F.3d 558, 568 (6th Cir. 2019))).

Metro now argues that the Court should revise the pre-trial order to exclude the remaining ADA discrimination claim because such a claim follows the same "but for" causation standard as the retaliation claim the Court already rejected. (<u>See</u> Doc. No. 116). Gomez counters that the motion should be construed as an untimely and improper motion to reconsider the denial of summary judgment on the ADA discrimination claim. (<u>See</u> Doc. No. 122).

The Court agrees with Gomez and will construe Metro's motion as one for reconsideration. As the Court outlined in its April 6, 2021 order, (Doc. No. 104), "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders

9

and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004). But such motions are appropriate only in "rare circumstances," see Grogg v. Clark, 2:15-cv-298-JRG-MCLC, 2016 WL 1394534, at *1 (E.D. Tenn. Apr. 7, 2016). Thus, courts should reconsider interlocutory orders only in limited instances, such as where there is: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Louisville/Jefferson Cty. Metro Gov. v. Hotels.com, LP, 590 F.3d 381, 389 (6th Cir. 2009) (quoting Rodriguez, 89 F. App'x at 959).

Based upon the record before the Court, none of these reasons weigh in favor of the Court reversing its decision on the disability discharge claim that has survived summary judgment. And even then, Metro simply has no excuse for waiting four months – until August 2021 – to challenge whether a claim should have survived summary judgment back in April 2021. Nor did the Court intend to "hide elephants in mouse holes" by dismissing a claim in the footnote of a motion for reconsideration. Whitman v. Am. Trucking Ass'n, 531 U.S. 457, 468 (2002). The ADA discrimination claim should go to the jury. Accordingly, Defendant's Motion to Determine Claims (Doc. No. 116) is **DENIED**.

D.  Contemporaneous Video Transmission of Ms. Tonya Foreman's Testimony at Trial

On July 28, 2021, the Court granted Defendant's "Unopposed Motion to Allow Testimony by Contemporaneous Transmission." (Doc. No. 114). And at the August 2, 2021 status conference, the Court advised Defendant to contact the Court's I.T. department to plan logistics for the video transmission.

The Court reminds Defendant that certain safeguards must be employed to ensure accurate video transmission without undue influence by third parties. Federal Rule of Civil Procedure 43

states that video testimony may be taken "with appropriate safeguards." Fed. R. Civ. P. 43(a). Such safeguards should include: (1) assurance that the witness can be heard and understood by the jury and the parties; (2) "that the witness testify alone, in a closed room, free of any outside influence on their testimonies"; (3) that Defendant "mark all documentary evidence they intend to provide to the witness prior to trial"; (4) that Plaintiff "be allowed a sufficient opportunity to cross-examine" the witness; and (5) that Plaintiff be able to question them via instantaneous transmission. See Pecora v. Barbera, No. 1:15-cv-73, 2017 U.S. Dist. LEXIS 230915, at *2–*3 (E.D. Tenn. Feb. 28, 2017).

Accordingly, the parties shall file notice with the Court, no later than **August 12, 2021**, regarding agreed safeguards.

E. Additional Orders

On August 2, 2021, the Court held a status conference and addressed several pending motions (Doc. Nos. 83, 95, 116) along with other preliminary matters before trial. The trial date of **August 17, 2021** was confirmed by the parties. For the reasons stated on the record, the Court orders as follows:

1. The pre-trial conference, scheduled for **August 13, 2021** at 1:00 P.M. is **RESET** for the same day at 11:30 A.M.

2. No later than **August 10, 2021** at noon, the Parties shall file:

    a. An agreed joint statement of the case for use during voir dire;

    b. COVID-related questions for use during voir dire;

    c. A revised witness list containing a 1–2 sentence summary of anticipated testimony; and

    d. Notice that demonstrative exhibits have been disclosed to opposing counsel

3. Additionally, no later than August 10, 2021 at noon, the Parties shall:

   a. Meet and confer on exhibits and facts of stipulations, if any, and file them electronically with the Court;

   b. The parties should provide four (4) total copies of the exhibits: two (2) for the Court, one (1) for the courtroom deputy; and one (1) for the witness.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE